IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-CV-555-FL

| | | |
|---|---|---|
| THOMAS RAY SANDERS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| C.D. ROBINSON, in his individual capacity, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court upon defendant's motion wherein he asks the court to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) and to strike a footnote within the complaint pursuant to Rule 12(f). (DE 32). The motion has been briefed fully, and in this posture, the issues raised are ripe for ruling. For the following reasons, the motion is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff commenced this action with initial complaint filed September 4, 2025, asserting claims of excessive force, prosecution without probable cause, fabrication of evidence, assault and battery, and negligence against the City of Raleigh ("Raleigh"), together with Jeremiah Thomas ("Thomas") and defendant, both Raleigh Police Department officers, in their individual and official capacities. Thereafter plaintiff noticed dismissal of defendants Raleigh and Thomas contemporaneous with the filing of an amended complaint only against defendant, in his individual capacity.

Plaintiff alleges claims of Fourth Amendment excessive force under 42 U.S.C. § 1983, and

assault and battery and negligence under North Carolina common law.  He seeks compensatory and punitive damages, attorneys' fees, and costs.

Defendant filed the instant motion pursuant to Rules 12(b)(6) and 12(f) January 2, 2026, relying on 40 video recordings (the "videos") depicting the use of force incident.  Plaintiff responded, and defendant replied.

**STATEMENT OF FACTS**

The facts alleged in the complaint may be summarized as follows.

Plaintiff and his teenage cousin rented a motel room in Raleigh on the evening of December 18, 2022.  (Compl. ¶ 9).  The two overslept their check-out time and were awoken by motel management telling them to leave.  (Id. ¶ 10).  Plaintiff and his cousin "gathered their belongings, but by the time they were ready to go, management had called the [Raleigh Police Department]."  (Id.).

Officers arrived at the motel while plaintiff and his cousin were still "in the motel room holding their belongings, ready to leave."  (Id. ¶ 11).  When the officers instructed the two to go, "they immediately left the room."  (Id.).  The officers followed plaintiff and his cousin and "demanded—under threat of arrest—that they identify themselves."  (Id. ¶ 12).  Plaintiff provided his name and birthdate and explained that the two slept in due to working late the night before.  (Id.).

When plaintiff's cousin "declined to provide his name[, t]he officers handcuffed him and pinned him to the ground, while [defendant] said, 'Do what you're f****** told.'"  (Id. ¶ 14).  Plaintiff "used his phone to record as [defendant] drove his elbow and knee into his cousin's head and back."  (Id. ¶ 16).  Defendant "then stood up and shoved [plaintiff], shouting at him to 'back up.'"  (Id. ¶ 17).  "When [plaintiff] kept recording, [defendant] shoved him at least four times and

2

slapped his phone from his hands." (Id.).

Plaintiff, "who was just 5'5" and 135 pounds," "was unarmed and briefly touched [defendant's] wrist after [defendant] shoved him." (Id. ¶¶ 19, 18). Plaintiff "pleaded with [defendant] to stop shoving him, but [defendant] abruptly grabbed [plaintiff] and pulled his hands behind his back to arrest him." (Id. ¶ 20). "Then, instead of handcuffing [plaintiff], [defendant] slammed him face-first into a large tree root on the ground, kneed him in the back, and forced the side and front of [plaintiff's] face down into the ground." (Id. ¶ 21). Plaintiff "never attempted to flee or resist arrest." (Id. ¶ 22).

Doctors at Wake Med hospital "noted extensive abrasions to [plaintiff's] right cheek, temple, chin[,] and lips, including a two-centimeter chin laceration." (Id. ¶ 23). Plaintiff "reported to hospital staff that his bottom teeth felt 'out of alignment' and 'pushed in.'" (Id.).

Plaintiff "was arrested and charged with resisting arrest and assaulting a public officer." (Id. ¶ 24). These charges subsequently were dismissed without leave to refile. (Id. ¶ 25).

In a footnote, the complaint also includes the following allegations:

Less than a month after the events detailed in this Complaint, [defendant] was involved in the death of Darryl Williams—tasing him multiple times after he was already detained.

Williams's family sued, alleging excessive force. Their lawsuit recently settled after the City of Raleigh agreed to pay $975,000. See Williams v. City of Raleigh, No. 5:24-cv-00173 (E.D.N.C. Mar. 18, 2024).

There, as here, [defendant] used excessive force against someone who posed no threat and was under police control. See Fed. R. Evid. 404(b)(2) (evidence of another "wrong or act" may be used to prove, inter alia, "lack of accident"); U.S. v. Whaley, 786 F.2d 1229, 1232-33 ("The mere fact that the 'other acts' at issue occurred after the events charged in the [Complaint] does not render them irrelevant.").

(Id. ¶ 21 n.1) (the "footnote").

**COURT'S DISCUSSION**

A.      Motion to Strike

Defendant requests that the court strike allegations in the footnote pursuant to Rule 12(f). "The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although "striking a portion of a pleading is a drastic remedy," it may be necessary where material in a pleading "might confuse the issues in the case." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001). The decision whether to grant or deny a motion to strike is within the discretion of the district court. See United States v. Ancient Coin Collectors Guild, 899 F.3d 295, 324 (4th Cir. 2018) (adopting abuse of discretion standard of review).

The court agrees with defendant's contention that the events described in the footnote "involve[] a different person, different facts, a different date, and different alleged tactics" than those in the rest of the complaint. (Def's Mem. (DE 33) at 14). Thus, where these allegations do not substantiate elements of plaintiff's claims, they are immaterial and impertinent.[1] See Fed. R. Civ. P. 12(f). Moreover, the footnote prejudices defendant by injecting collateral issues regarding an unrelated lawsuit.

Where the allegations in the footnote are immaterial, impertinent, and prejudicial, the court, in its discretion, strikes the footnote from the complaint pursuant to Rule 12(f).[2] Accordingly, the court does not consider the allegations in the footnote when ruling on the motion to dismiss.

---

[1]      The court makes no determination as to whether the matters alleged in the footnote are subject to discovery or whether evidence thereof is relevant or otherwise admissible at trial.

[2]      Where the cited rule permits a court to "strike [material] from a pleading," the court does not entertain defendant's request in reply to strike the language of the footnote from plaintiff's response to the instant motion. Fed. R. Civ. P. 12(f) (emphasis added).

4

B.     Motion to Dismiss

1.     Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[3]

2.     Analysis

Relying on the videos, defendant argues that the force used against plaintiff was objectively reasonable under Graham v. Connor, 490 U.S. 386, 388 (1989), that defendant is entitled to qualified immunity and public official immunity, and that plaintiff fails to state a claim for negligence.  The court first sets out its consideration of the videos before turning to the merits of defendant's arguments.

a.     Video Recordings

"A district court can consider a recording submitted at the motion to dismiss stage when (1) the recording is integral to the complaint and its authenticity is not challenged." Bermeo v. Andis, 163 F.4th 87, 93 (4th Cir. 2025).  However, at the motion to dismiss stage, the court may consider such a recording "only to the extent that the recording clearly depicts a set of facts

---

[3]     Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

contrary to those alleged in the complaint, or blatantly contradicts the plaintiff's allegations, rendering the plaintiff's allegations implausible." Id. "[T]his standard is a very difficult one to satisfy and requires that the plaintiff's version of events be utterly discredited by the video recording." Doriety for Est. of Crenshaw v. Sletten, 109 F.4th 670, 679 (4th Cir. 2024).

Plaintiff does not dispute the authenticity of the videos and waives any argument that the videos are not integral to his complaint. (See Pl's Resp. (DE 37) at 3 n.1). Accordingly, the court will consider the videos to the extent they "blatantly contradict[] the plaintiff's allegations." See Bermeo, 163 F.4th at 93. However, where defendant directs the court's attention to portions of only two videos, at this stage the court declines to review the remaining 38 videos for depictions supporting defendant's arguments.

Defendant asserts that the video titled "1. Ramge (bwc)" ("Video 1") provides context omitted by the complaint, specifically "the objective contemporaneous predicate: a manager-requested trespass and an officer's direct communication that names were needed because of that trespass." (Def's Mem. (DE 33) at 4). However, this depiction does not contradict plaintiff's allegations that "the officers had reason to suspect that [plaintiff] had committed misdemeanor trespassing," and the "officers followed [plaintiff and his cousin] and demanded—under threat of arrest—that they identify themselves." (Compl. ¶¶ 13, 12). Where defendant does not identify any factual allegation "blatantly contradicted" by Video 1, the court does not consider Video 1 in ruling on the instant motion.

The video titled "3. Robinson (BWC)" ("Video 3") depicts the recording captured by defendant's body worn camera. Defendant contends that the portion of Video 3 from approximately 2:45 to 3:05 depicts plaintiff using explicit language, demanding that defendant stop pushing him, and grabbing defendant's wrist multiple times. Defendant argues that "[t]his

6

sequence directly contradicts the Amended Complaint's repeated assertions that [p]laintiff never attempted to touch [defendant], never resisted, and was always within [defendant's] control." (Def's Mem. (DE 33) at 5). Where the video depicts plaintiff standing and walking with no restraint and refusing to back up when instructed, the court agrees that this blatantly contradicts plaintiff's allegation that he "was always within [defendant's] control." (Compl. ¶ 22; see Video 3 at 0:20-3:05). However, Video 3 does not contradict the allegations that plaintiff "was unarmed and briefly touched [defendant's] wrist after [defendant] shoved him," that plaintiff "pleaded with [defendant] to stop shoving him," or that plaintiff "never attempted to flee or resist arrest." (Id. ¶¶ 18, 20, 22).

Therefore, the court considers Video 3 only to the extent it blatantly contradicts plaintiff's allegation that he "was always within [defendant's] control." (Compl. ¶ 22). With this consideration in mind, the court turns to the merits of defendant's arguments.

      b.     Objective Reasonableness

Claims of excessive force during an arrest or investigatory stop are governed by the Fourth Amendment to the United States Constitution and are analyzed under an "objective reasonableness" standard. Graham, 490 U.S. at 388; Cooper v. Doyle, 163 F.4th 64, 75 n.7 (4th Cir. 2025). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396. Thus, the relevant question is "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996). This standard mandates "a careful balancing" of Fourth Amendment rights "against the countervailing governmental interests at stake." Graham, 490 U.S. at 396.

Application of the objective reasonableness standard is highly fact dependent; factors to

consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. "The extent of the plaintiff's injury is also a relevant consideration." Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003). Courts must consider these and other factors to determine "whether the totality of the circumstances justified a particular sort of seizure." Id. at 528 (quoting Tennessee v. Garner, 471 U.S. 1, 8–9 (1985)).

Here, the first Graham factor, severity of the crime at issue, weighs in plaintiff's favor. See Graham, 490 U.S. at 396. Plaintiff was suspected of misdemeanor trespassing, which defendant concedes is a "nonviolent offense." (See Def's Mem. (DE 33) at 8). Such a "nonviolent misdemeanor offense [is] not of the type that would give an officer any reason to believe that [plaintiff] was a potentially dangerous individual." Smith v. Ray, 781 F.3d 95, 102 (4th Cir. 2015). That defendant and the other officers "were addressing a legitimate property complaint," explains why they persisted in asking for plaintiff's and his cousin's names, but it does not justify the particular force alleged. (See Def's Mem. (DE 33) at 8).

The second Graham factor, whether plaintiff posed an immediate threat to the officers or others, also weighs in plaintiff's favor. See Graham, 490 U.S. at 396. Plaintiff was unarmed, and there is no indication that any of the officers believed him to be armed. (Compl. ¶ 18; see id. ¶ 15 ("[Plaintiff] was holding his phone in one hand and a bag of clothes in the other.")). By the time force was used against plaintiff, his cousin was already handcuffed on the ground, and there were multiple officers around him. (Id. ¶¶ 14-17). Moreover, plaintiff alleges that he "was just 5'5" and 135 pounds," supporting an inference that plaintiff was not physically imposing. (Id. ¶ 19).

To the extent Video 3 contradicts the allegation that plaintiff "was always within [defendant's] control," such contradiction is not fatal to plaintiff's claim. (See id. ¶ 22). Plaintiff's

shouting, use of profanity, and failure to "back up" as instructed do not pose an immediate threat to the officers or others. See Smith, 781 F.3d at 102 (finding no immediate threat where suspect was unarmed, smaller woman, who had not made verbal threats); Jones, 325 F.3d at 530 ("[S]creaming and foul language . . . constitutes a mere nuisance and not an immediate threat to the safety of the officers or others under Graham."). Moreover, "[t]he subject of a seizure does not create [an immediate safety] risk simply because he is doing something that can be characterized as resistance-even when that resistance includes physically preventing an officer's manipulations of his body." Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 909 (4th Cir. 2016). Accordingly, even where plaintiff "touched [defendant's] wrist after the officer shoved him," plaintiff did not create an immediate safety risk justifying "slamm[ing] him face-first into a large tree root on the ground, knee[ing] him in the back, and forc[ing] the side and front of [his] face down into the ground." (Compl. ¶¶ 18, 21).

Plaintiff alleges that he "never attempted to flee or resist arrest," and the video cited by defendant does not blatantly contradict this allegation. (Compl. ¶ 22). In Wilson v. Prince George's Cnty., 893 F.3d 213 (4th Cir. 2018), the court held that a suspect's refusal to drop an open pocketknife when ordered did not constitute resisting arrest where the officer had not attempted to make an arrest. Id. at 217, 220. Likewise here, plaintiff's refusal to "back up" as directed by defendant does not constitute resisting arrest. (See Compl. ¶ 17). Thus, the third Graham factor, whether plaintiff actively resisted arrest or attempted to evade arrest by flight, also weighs in plaintiff's favor. See Graham, 490 U.S. at 396.

Finally, defendant does not challenge the severity of plaintiff's injuries: "abrasions to his right cheek, temple, chin and lips, including a two-centimeter chin laceration," and possible misalignment of his bottom teeth. (Compl. ¶ 23). Thus, considering the facts as alleged and that

9

portion of Video 3 which contradicts the allegations, "the totality of the circumstances" did not justify the "particular sort of seizure" effected here. See Jones, 325 F.3d at 528. Therefore, plaintiff states a plausible claim for excessive force. See id.

      c.      Qualified Immunity

Defendant next argues he is entitled to qualified immunity. "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." District of Columbia v. Wesby, 583 U.S. 48, 62– 63 (2018). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." Id. at 63.

As explained above, based upon the allegations in the complaint, and drawing reasonable inferences in plaintiffs' favor, defendant violated plaintiff's right to be free from excessive force by "slamm[ing] [plaintiff] face-first into a large tree root on the ground, knee[ing] him in the back, and forc[ing] the side and front of [plaintiff's] face down into the ground," when plaintiff was suspected of a nonviolent misdemeanor, was unarmed, and had not attempted to flee or resist arrest. (Compl. ¶¶ 21, 13, 18, 22). The unlawfulness of defendant's alleged conduct was clearly established by Rowland v. Perry, 41 F.3d 167 (4th Cir. 1994), and Yates v. Terry, 817 F.3d 877, 888 (4th Cir. 2016).

In Rowland, the Fourth Circuit denied qualified immunity to an officer who "used a wrestling maneuver, throwing his weight against [the suspect's] right leg and wrenching the knee until it cracked" because the offense was minor, the suspect posed no threat, and "he resisted only to the extent of instinctively trying to protect himself from the [officer's] onslaught." 41 F.3d at 172, 174. Similarly, in Yates, the court held that "a police officer was not entitled to use

10

unnecessary, gratuitous, or disproportionate force by repeatedly tasing a nonviolent misdemeanant who presented no threat to the safety of the officer or the public and who was compliant and not actively resisting arrest or fleeing." 817 F.3d at 887.

Thus, the Fourth Circuit's "precedent makes clear that a nonviolent misdemeanant who is compliant, is not actively resisting arrest, and posses no threat to the safety of the officer or others should not be subjected to unnecessary, gratuitous, and disproportionate force." Id. at 888; see also Livingston v. Kehagias, 803 F. App'x 673, 684 (4th Cir. 2020) ("Since at least 1994, when [the Fourth Circuit] decided Rowland, it has been clear that serious physical force . . . is constitutionally excessive when used against an individual suspected, at most, of a minor crime, who is unarmed, and who does not attempt to flee or physically attack the officer – even if the suspect offers passive resistance, struggling with the officer after an initial use of force against the suspect.").

Where the right of an unarmed, non-resistant individual suspected of a non-violent misdemeanor to be free of disproportionate force was clearly established at the time of plaintiff's encounter with defendant, defendant is not entitled to qualified immunity at this juncture. See Yates, 817 F.3d at 888; Rowland, 41 F.3d at 174; see also Riddick v. Barber, 109 F.4th 639, 650 n.5 (4th Cir. 2024) ("[Q]ualified immunity typically is best addressed at the summary judgment stage after the facts have been developed through discovery.").

d.      State Law Claims

Defendant argues that he is entitled to public official immunity from plaintiff's state law tort claims. Where "the analysis of public officers' immunity is functionally identical to [the court's] discussion of . . . qualified immunity with respect to the § 1983 claims, the state law claims are subsumed within the federal excessive force claims." Cooper v. Sheehan, 735 F.3d 153, 160

11

(4th Cir. 2013). Thus, where defendant is not at this point entitled to qualified immunity, neither is he entitled to public official immunity.

Finally, defendant argues that the negligence claim fails where plaintiff alleges that defendant acted "deliberately, maliciously, willfully, wantonly, and corruptly." (See Compl. ¶ 39). However, plaintiff's negligence claim is pleaded properly in the alternative. See Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); Erie Ins. Exch. v. Stark, 962 F.2d 349, 354 (4th Cir. 1992) ("[I]nconsistent factual theories of claim or defense are expressly allowed in federal practice."). Thus, inconsistency is not fatal to plaintiff's alternative claim of negligence. Moreover, "[a] breach of duty may be willful while the resulting injury is still negligent. Only when the injury is intentional does the concept of negligence cease to play a part." Pleasant v. Johnson, 312 N.C. 710, 714 (1985). Thus, where plaintiff makes no allegation as to defendant's intent to cause injury, his negligence claim is not foreclosed.

In sum, where defendant is not entitled to public official immunity, and where plaintiff properly pleads negligence in the alternative, plaintiff's state law claims may proceed.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss and to strike (DE 32) is GRANTED IN PART and DENIED IN PART, as follows:

1) That portion of defendant's motion requesting the court strike the footnote from the complaint is GRANTED pursuant to Rule 12(f). The footnote in plaintiff's complaint hereby is STRUCK;

2) For clarity of the docket, plaintiff is DIRECTED to file within five days of the date of entry of this order second amended complaint consistent with this order. No alterations beyond

removal of the footnote shall be made without leave of court; and

3) That portion of defendant's motion seeking dismissal under Rule 12(b)(6) is DENIED. Defendant shall have 14 days from the filing of second amended complaint within which to file responsive pleading.

SO ORDERED, this the 22nd day of May, 2026.

_____
LOUISE W. FLANAGAN
United States District Judge

13